CENTER FOR BIOLOGICAL DIVER-SITY, The Center for Sierra Nevada Conservation, Natural Resources Defense Council, and Sierra Nevada Forest Protection Campaign, Plaintiffs,

v.

Gale A. NORTON, in her official capacity as Secretary of the Interior; and Marshall P. Jones, in his official capacity as Acting Director, United States Fish and Wildlife Service, Defendants.

No. C 01–2950 SC.

United States District Court, N.D. California.

March 5, 2002.

Geoff Hickcox, Kenna and Hickcox, Durango, CO, Brendan R. Cummings, Center For Biological Diversity, Idyllwild, CA, for Center for Biological Diversity, California Native Plants Society, plaintiffs.

David P. Hubbard, Procopio Cory Hargreaves and Savitch, San Diego, CA, for American Sand Association, California Off–Road Vehicle Association, American Motorcycle Association, Inc., District 37, San Diego Off–Road Coalition, Off–Road Business Association, intervenors.

Mary Whittle, US Department of Justice, Washington, DC, U.S. Attorney CV, U.S. Attorneys Office Southern District of California, San Diego, CA, for Gale Norton, United States Fish and Wildlife Service, defendants.

William E. Halle, Hewitt and McGuire, Irvine, CA, for Building Industry Legal Defense Foundation, plaintiff.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

### I. *INTRODUCTION*

On July 31, 2001, Plaintiffs Center for Biological Diversity, the Center for Sierra Nevada Conservation, the Natural Resources Defense Council and the Sierra Nevada Forest Protection Campaign, ("Plaintiffs") filed a Complaint for Declaratory and Injunctive Relief to compel Defendants Secretary of the Interior Gale Norton ("Secretary") and Acting Director of the United States Fish and Wildlife Service ("Service") Marshall Jones (collectively "Defendants") to comply with certain listing provisions of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533. Now before the Court is Plaintiffs' Motion for Summary Judgment. For the follow-

ing reasons, Plaintiffs' Motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs are environmental agencies who seek protection under the ESA for two species: the California spotted owl (Strix occidentalis occidentalis) ("owl") and the west coast population of the fisher (Martes pennanti) ("fisher"). The owl occurs on both the west and east sides of the Sierra Nevada, in the central Coast Ranges at least as far north as Monterey County and in all major mountain ranges of Southern California. Plaintiffs allege that the owl is in danger of decline due, in large part, to logging.

The fisher is a member of the Mustelid family, which includes martens, weasels and some otters. The native west coast population of the fisher is found in Northern California and in the southern Sierra Nevada. There is also a reintroduced population in the southern Oregon Cascade Mountains. Plaintiffs allege that the historic range of the fisher has declined by approximately 50 percent in California, and the southern Sierra Nevada population in particular is believed to be at significant risk of extinction.

On April 10, 2001, Plaintiffs notified the Secretary of her failure to comply with certain citizen petition-driven ESA listing procedures. Receiving no response, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief on July 31, 2001 seeking to compel Defendants' compliance with the Act. Specifically, they ask 1) that Defendants make an initial finding as to whether Plaintiffs' petition to include the fisher on the list of protected species presents "substantial scientific or commercial information" suggesting listing the fisher may be warranted and 2) that Defendants make a final determination as to whether to add the owl to the list of protected species under the ESA and, if the owl is added,

that Defendants propose regulations implementing such a listing.

The case now before the Court bears some resemblance to the related case, *Center for Biological Diversity et al. v. Norton*, No. C–01–2106, decided by this Court on December 12, 2001. Both involve citizen petitions to list species as protected or endangered under the ESA. In the related case, Plaintiffs pressed for final listing determinations for the mountain yellow-legged frog and the Yosemite toad. Here, Plaintiffs request the same final listing determination for the owl and an initial finding for the fisher.

As they did in the related case, Defendants once again inform the Court that their hands are tied by Congress's imposition of a budget moratorium (now lifted) in April 1995. Pub.L. No. 104–06, 109 Stat. 73, 86 (April 10, 1995). At that time, Congress reduced the budget for listing by $1.5 million and imposed a moratorium on the listing procedure through fiscal year 1996. Defendants note that the Service continues to be underfunded despite the dissolution of the moratorium, resulting in a backlog of listing petitions and court-ordered listing obligations.

Defendants inform the Court that they are barely managing to keep abreast of their obligations engendered by past litigation. Indeed, if they had not obtained relief from some judgments, they would have been compelled to violate the Anti-Deficiency Act, 31 U.S.C. § 1341. According to Defendants, these obligations will continue to consume virtually all of the Service's resources for fiscal year 2002. Decl. of Gary Frazer in Supp. of Def.'s Opp. to Pls.' Mot. for Summ. J. ("Frazer Decl.") ¶¶ 8–10.

Defendants claim that this backlog has prevented them from making an initial finding for the fisher. They were able to make the finding for the owl, however,

albeit after only a cursory review of the petition and the Service's own data. The Service has also been unable to complete the 12–month finding for the owl because of its budget limitations.

## III. *LEGAL STANDARD*

### A. *Summary Judgment*

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on mere allegations, but must set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *The Endangered Species Act*

Designating a species as threatened or endangered is the first step toward providing it with meaningful protection. Under the ESA, the Secretary, who is responsible for enforcing the Act, may list species at her own discretion. She is also obligated to review petitions from outside parties who provide her with scientific information suggesting that a species may be threatened. 16 U.S.C. § 1533(b)(3)(A).

When an interested outside party petitions the agency for a listing, the Secretary must follow a series of procedural steps. First, "[t]o the maximum extent practicable," within 90 days, the Secretary must initially determine whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). Next, if such information is present, the Secretary must then determine within 12 months of the petition's receipt whether the petition is warranted or not, or warranted but precluded by other proceedings. *Id.* at § 1533(b)(3)(B). If the species warrants a listing, the Secretary must "promptly" publish in the Federal Register "the complete text of a proposed regulation to implement such an action." *Id.* at § 1533(b)(3)(B)(ii). Then, within one year from the date on which the proposed rule is published, the Secretary must either publish in the Federal Register a final regulation implementing the listing decision or withdraw the proposed rule. *Id.* at § 1533(b)(6)(A). The final listing determination procedure is a mandatory, nondiscretionary obligation and may be enforced, as in this case, by citizen-suit. *Environmental Def. Ctr. v. Babbitt*, 73 F.3d 867, 871 (9th Cir.1995); 16 U.S.C. § 1540(g).

## IV. *DISCUSSION*

Defendants do not contest that they have failed to make a final determination for the owl in a timely fashion. They do dispute Plaintiffs' contention that their obligation to make an initial finding for the fisher within one year from the date the petition is received is non-discretionary. Plaintiffs seek a court order requiring Defendants to make both findings and to require them to proceed with publication of proposed regulations governing the treatment of these species if protection is warranted. Because the dispute over the ESA's listing requirements presents questions of law, the issues before the Court are ripe for summary determination.

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.[1] For the reasons discussed below, Plaintiffs' Motion is granted in part and denied in part.

### A. *Fisher*

On December 5, 2000, the Secretary received Plaintiffs' petition to list as threatened or endangered and to designate critical habitat for the west coast population of the fisher. The Secretary has taken no action to date.

■■■ According to the Act, the Secretary must take certain steps after a petition is filed to add a species to the protected or endangered list. The first of those is a 90–day initial finding:

> *To the maximum extent practicable,* within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 to add a species to, or to remove a species from, either of the lists published under subsection (c) of this section, the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.

16 U.S.C. § 1533(b)(3)(A) (emphasis added). The parties do not dispute that this language unambiguously requires the Secretary to make an initial finding.[2] They disagree, however, as to the amount of discretion this provision vests in the Secretary as to when the finding must be made.

Plaintiffs claim that while the statute does afford Defendants some discretion, the ESA manifests a preference that the initial finding be made within 90 days of the date the petition is received, in this case, by March 5, 2001. While admitting that the statute does set forth a 90–day window in which the finding *should* be made, Defendants contend that this is merely a guideline for the Secretary to follow. In support, Defendants cite the legislative history, which recognizes that "a large influx of petitions coupled with an absolute requirement to act within 90 days would force the devotion of staff resources to petitions and deprive the Secretary of the use of those resources to list a species that might be in greater need of protection." H.R. Conf. Rep. No. 97–835, at 21, 97th Cong., 2d Sess. (Sept. 17, 1982), reprinted in 1982 U.S.C.C.C.A.N. 2807, 2860–62; *see also Biodiversity Legal Foundation v. Babbitt,* 146 F.3d 1249, 1255 (10th Cir.1998) (*"BLF"*) (finding that the "to the maximum extent practicable" language affords the Service "the discretion to refrain from acting on initial petitions to list.")

Plaintiffs argue that to the extent the duty is discretionary, any leeway is capped by Defendants' non-discretionary duty, if she finds initially that a listing may be warranted, to find within 12 months of receiving the petition whether listing is in fact warranted. 16 U.S.C. § 1533(b)(3)(B). Plaintiffs argue that because the non-discretionary 12–month window runs from the day the petition was received, the 90–day finding must be made before it expires because an initial finding must be made before the final determination.[3] In support, they cite *United States v. Powell,* 6 F.3d 611 (9th Cir.1993) for the "basic rule of statutory construction 'that one provision should not be interpreted in a way

---

1. Nor is there any dispute regarding Plaintiffs' standing to bring this action. Plaintiffs aver, and Defendants do not dispute, that they have individual member standing.

2. The Court will not address Plaintiffs' Administrative Procedure Act claims, because, although they are addressed by the Defendant, they are not argued in Plaintiffs' motion for summary judgment.

3. In this case, the 12–month window would have expired on December 5, 2001.

which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless.'" *Id.* at 614 (internal citations omitted).

 The question before the Court was answered directly in *BLF*, where the Tenth Circuit recognized the ambiguity in the discretionary language found in the 90–day initial finding provision. 146 F.3d at 1254. Reluctant to impose its own interpretation of the statute on the Service, the court deferred to the Service's view that a budgetary shortfall would excuse compliance with the provision if pending proposals were more pressing.[4] *Id.* at 1255. The court recognized that the "to the maximum extent practicable" language evinced a recognition that mandatory listing provisions, such as the one requiring a 12–month finding after a positive initial determination, should have priority over initial listing determinations. *Id.* at 1256.

Plaintiffs argue that the Tenth Circuit did not address the precise question before us: whether the one-year mandatory deadline limits the scope of the discretion embodied in the 90–day initial finding requirement. But as Defendants point out, the Tenth Circuit did so indirectly. The facts in *BLF* speak for themselves: in that case the application had been pending without an initial listing determination for three years—well past Plaintiffs' suggested one-year cap, and the court found this delay to be within the Service's reasonable discretion. *Id.* at 1257.

To Plaintiffs, such a reading renders the time provision of the initial determination requirement meaningless. Moreover,

Plaintiffs argue that because the 90–day finding is such a simple one—no field work, literature searches or consultation with scientists is required—there is no excuse for non-compliance. In sum, Plaintiffs argue that to the extent that the "maximum extent practicable" language does vest discretion in the Secretary, that discretion is not unfettered.

Plaintiffs' argument is a cogent one, but is ultimately unavailing. The discretionary language embodied in the initial listing determination provision gives the Service the right to put its mandatory duties first. These mandatory duties include not only final determinations but existing court-ordered obligations. This is what the Service has done in the fisher's case. Moreover, the Court is not persuaded by Plaintiffs' argument that Defendants intend to proceed in a way that renders the statute internally inconsistent. While it may be true that Defendants have failed to comply with the law, there is no suggestion here that Defendants intend to make the statutory findings out of order. Defendants do not contend that they should be allowed to make the 12–month finding before the 90–day initial finding, for example.

It is true, however, that when and if a positive 90–day finding is made for the fisher, Defendants will be in immediate violation of their 12–month non-discretionary obligation to make a final listing determination. If and when that happens, Plaintiffs should proceed as they have for the owl; they should bring to the Court's attention Defendants' failure to comply

---

**4.** The Tenth Circuit explicitly rejected the plaintiffs' argument that the Service should be required to show that the species it addresses first are in greater peril. *BLF,* 146 F.3d at 1255. Rather, because the Court interpreted the legislative history to be ambiguous on the point, it deferred to the defendants' more expansive interpretation that limited funding

excused a delay in the initial listing process. This Court agrees and will not require Defendants to show that other species are in fact in greater danger than the fisher in order to avoid summary judgment. Defendants' detailed explanation of its budgetary problems is sufficient. *See generally,* Frazer Decl.

with a non-discretionary legal obligation. Until then, because the question of whether Defendants have violated the mandatory final listing procedure for the fisher is not before us, the Court will not address it. *Biodiversity Legal Foundation et al. v. Badgley,* No. Civ. 98–1093 KI, 1999 WL 1042567, at *7 (D.Or. Nov. 17, 1999).

In their Motion, Plaintiffs propose that Defendants be ordered to make an initial finding for the fisher by March 5, 2002. Defendants do not offer a proposed schedule, but suggest, rather, that they will complete the finding "when it is practicable to do so." Frazer Decl. ¶ 5. The Court finds it troubling that Defendants counter Plaintiffs' proposal so evasively. But ultimately, it is for the Service to decide how to best prioritize its workload and to allocate its budget accordingly.[5] Therefore, the Court denies Plaintiffs' Motion as it relates to the fisher. In so doing, the Court emphasizes the deep trust we place in the Service to further the aim of the ESA to prevent the extinction of threatened and endangered wildlife.

**B.** *Owl*

■ On April 3, 2000, the Secretary received Plaintiffs' petition to list the California spotted owl as threatened or endangered.[6] On October 12, 2000, the Service published in the Federal Register its 90–day initial finding that the petition presented scientific and commercial information indicating that listing may be warranted. 65 Fed.Reg. 60605 (Oct. 12, 2000), Decl. of Laura L. Hoehn in Supp. of Pls.'s Mot. for Summ. J., Ex. A. Defendants have failed to take any further action. Accord-

ing to their non-discretionary obligation under the law, they should have made a final determination by April 3, 2001, one year from receiving the petition. Plaintiffs ask that the Court declare Defendants to be in violation of the ESA and order them to comply by publishing a final notice in the Federal Register by April 15, 2002, which, they point out, is slightly over a year more than the time allowed by statute.

■ Defendants do not deny that they have failed to comply with the ESA's listing procedures, nor do they deny that the Court may compel them to do so. They suggest, however, that due to the budgetary shortfall described above, they will be unable to take final action on the owl petition before February 10, 2003.

Plaintiffs argue, as they did in the related case, that this time-line flouts the law. They argue that evidence exists to suggest that the owl population may be declining by as much as 7–10 percent per year, and that an additional year's delay will result in an additional year's decline. But the Court notes that the Service, in its initial finding in the Federal Register, observed that these estimates "may not reflect true rates of decline for several reasons . . . ." 65 Fed.Reg. at 60606. Moreover, in response to Plaintiffs' request that the owl be afforded emergency listing, the Service declined, finding "no imminent, devastating actions that could result in the extinction of the species." *Id.* at 60607.

■ As in the related case, the Court agrees with Defendants that the ESA does

---

**5.** Should Defendants decide to move for summary judgment on this point, the Court may decide the question once and for all and leave it with the wisdom of the Service to decide when to make an initial finding for the fisher. Because no such motion has been made, Plaintiffs' claim as to the fisher remains alive and well.

**6.** The California spotted owl is one of three recognized subspecies of owl. The other two subspecies, the northern spotted owl (Strix occidentalis caurina) and the Mexican spotted owl (Strix occidentalis lucida) have been listed as threatened. 55 Fed.Reg. 26114 (June 26, 1990); 58 Fed.Reg. 14248 (March 16, 1993).

not divest the Court of its equitable discretion to fashion a reasonable remedy. This case was brought pursuant to 16 U.S.C. § 1540(g)(1)(C), which allows citizens to bring a civil suit against the Secretary when she has failed to perform a nondiscretionary duty. *Id.* Unlike 16 U.S.C. § 1540(g)(1)(B), which requires a district court to *compel* the Secretary to apply prohibitions against the taking of any threatened or endangered species, § 1540(g)(1)(C) carries no such language mandating specific action. Rather, subsection (C) simply bestows jurisdiction upon district courts to hear such suits. *Id.; see also Environmental Defense Center v. Babbitt*, 73 F.3d 867, 872 (9th Cir.1995) (requiring listing within a reasonable time after funding is made available). To that end, Defendants ask that in fashioning a remedy for this case, the Court should consider the other court-ordered obligations that demand their time and attention. The Court will respect Defendants' other commitments and, as in the related case, will adopt their proposed deadline of February 10, 2003.

Plaintiffs' attempt to distinguish the Ninth Circuit's holding *Environmental Defense Center v. Babbitt* is unavailing. Plaintiffs argue that in that case, the court ruled pending a moratorium then in effect, and that on remand, after the spending freeze was lifted, the district court immediately ordered the final listing to be published. But the Ninth Circuit did not specifically hold that the moratorium's demise automatically means Defendants must come into immediate compliance with the Act. Rather, the court held that compliance may be delayed "until a reasonable time after appropriated funds are made available, the time to be specified by the district court." *Id.* at 872.

■ While technically true that the moratorium is now gone, there is still little difference in the financial situation facing the Service; there is still too little money to meet overwhelming demand. The effects of the moratorium still linger, and the Court stands by its citation to the Ninth Circuit's recognition that a government agency cannot act without funding. *Environmental Defense Center v. Babbitt*, 73 F.3d at 872 (citing 31 U.S.C. §§ 1341–42).

■ Furthermore, the Court cannot agree with Plaintiffs' contention that this Court would effectively be repealing or amending the ESA by not requiring the Service to comply. Plaintiffs said it best in their brief: "To fully resolve the dilemma at issue, it is Congress that must undertake the politically contentious task of choosing between adequately funding the ESA listing program or amending it to eliminate or modify the deadlines that ensure species receive timely consideration from Defendants." By deferring to the Service's discretion in allocating its limited resources, the Court neither endorses nor attacks the legislation at issue. It merely resigns itself to the fact that it is not its place "to assess the wisdom of policy choices." *BLF*, 146 F.3d at 1257.

Therefore, in granting Plaintiffs' Motion for Summary Judgment as to the California spotted owl, the Court adopts Defendants' proposed February 10, 2003 deadline for compliance with its obligation to make a final determination as to whether this species warrants listing as threatened or endangered.

Plaintiffs also request that the Court retain jurisdiction over the matter until the Secretary fully complies with any Court orders. That request is granted. And, as in the related case, Defendants are ordered to periodically review the plight of the owl and the fisher in an effort to discern whether they face circumstances warranting an emergency listing pursuant to 16 U.S.C. § 1533(b)(7).

## V. CONCLUSION

Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part. Defendants are hereby ORDERED to make a final listing determination for the California spotted owl by February 10, 2003.

IT IS SO ORDERED.