**INSTITUTE FOR WILDLIFE PROTECTION, et al.,**
**Plaintiff(s),**

v.

**Gale NORTON, et al., Defendant(s).**

**No. C02–1404P.**

United States District Court,
W.D. Washington
at Seattle.

Dec. 3, 2003.

Don Webb, Eugene, OR, Michael C. Subit, Frank Freed Subit & Thomas, Seattle, WA, for Plaintiff.

Brian C. Kipnis, US Attorney's Office, Seattle, WA, James A. Maysonett, Jean E. Williams, Thomas L. Sansonetti, Washington, DC, for Defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PECHMAN, District Judge.

The above-entitled Court, having received and reviewed:

1. Plaintiffs' Motion for Summary Judgment
2. State of Nevada Opposition to Motion for Summary Judgment
3. Federal Defendants' Opposition to Plaintiffs' Motion for Summary and Cross–Motion for Summary Judgment
4. Plaintiffs' Reply in Support of Summary Judgment
5. Plaintiffs' Opposition to Defendants' Summary Judgment Motion
6. Federal Defendants' Reply in Support of Cross–Motion for Summary Judgment

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS HEREBY ORDERED that plaintiffs' motion is DENIED.

IT IS HEREBY FURTHER ORDERED that defendants' motion is GRANTED and this matter is DISMISSED with prejudice.

### Background

On December 28, 2001, plaintiffs submitted a petition to the Secretary of the Department of the Interior (defendant Norton) to list a bird known as the Mono sage grouse ("MSG") as an endangered species; the petition also requested that the MSG be placed on an "emergency list" because plaintiffs believed the danger to the species to be imminent. Upon receipt, the Secretary assigned the petition to the Pacific Region of the U.S. Fish and Wildlife Service ("FWS") in Portland, Oregon.

The Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., requires that the Secretary, within 90 days of receiving the petition and "to the maximum extent practicable," must make a determination of whether the petition presents substantial scientific or commercial information indicating that a listing may be warranted. 16 U.S.C. § 1533(b)(3)(A). The Secretary's 90–day finding must be published in the Federal Register. *Id.*

On March 20, 2002, FWS issued a letter to plaintiffs advising that, because of limited funding and other commitments arising out of court orders and settlement agreements, "it is not practicable for us to address your petition at this time." The letter also stated that "[o]ur initial review of this petition does not indicate that an emergency situation exists."

Plaintiffs sent two letters to defendants advising them of their allegations that defendants' actions were in violation of the ESA; the second (mailed on April 11, 2002) "express[ed] concern over the delays in consideration of emergency listing and of the required 90 day finding, and inform[ed] the FWS of [plaintiffs'] intent to sue." Amended Complaint, ¶ 3.15. On July 3, 2002, plaintiffs filed the lawsuit which is presently before the Court.

The original complaint asserted two claims. First, that the failure to issue a 90–day finding within 90 days was arbitrary and capricious; second, that defendants' failure to adequately consider the "best scientific and commercial data available" in reaching the decision that the MSG did warrant emergency listing was likewise arbitrary and capricious. Plaintiffs sought declaratory relief that the failure to publish findings within 90 days and the failure to qualify the MSG for emergency listing were arbitrary and capricious, and also sought an order that FWS reconsider the emergency listing request.

On December 26, 2002, FWS did publish in the Federal Register its 90–day finding in respect to plaintiffs' petition. The agency concluded that there was insufficient data to either consider listing the MSG as an endangered species or to find that they constituted a "distinct population segment" (a prerequisite for emergency listing status).

In response to the published finding (and a summary judgment motion challenging the continued viability of their first claim for relief), plaintiffs filed an amended complaint. Their first claim for relief was revised to include allegations that defendants' delay in publishing the 90–day finding was arbitrary and capricious and constituted a violation of the ESA. There were no amendments made to plaintiffs' second claim for relief.

Presently pending before the Court are cross-motions for summary judgment which are dispositive of the causes of action.

### Discussion

*ESA and the 90–day finding requirement*

In appending the language "to the maximum extent practicable" to § 1533(b)(3)(A), Congress clearly intended to build some flexibility into the statutory requirement of the 90–day finding. The question of what will justify a delay in issuing a 90–day finding and what the agency must demonstrate to provide that justification has not been definitively answered in the Ninth Circuit.

It is plaintiffs' position that the agency's only legitimate excuse for failure to publish their findings within 90 days is that their resources were committed to working on other species which they had determined were in greater peril than the species whose petition was awaiting the 90–day finding. Plaintiffs take the further position that the only proof which will satisfy this requirement is documentary demonstration of the species to whom the agency has decided to assign a higher priority, accompanied by proof that (1) these priority species are in fact in greater peril and (2) these commitments are in fact commanding all the agency's available resources.

The Tenth Circuit, however, has ruled that the ambiguous statutory language of § 1533(b)(3)(A) not only entitles the FWS to some leeway in their publication of the 90–day finding, but that the agency is entitled to some deference in their view that budgetary limitations could excuse compliance with the 90–day deadline if those funding shortfalls were the result of devoting their resources to other pressing proposals. *Biodiversity Legal Foundation v. Babbitt,* 146 F.3d 1249, 1255 (10th Cir. 1998). That opinion has been adopted by a Ninth Circuit District Court, which also endorsed the Ten Circuit's approach to the nature of the proof required:

> The Tenth Circuit explicitly rejected the plaintiffs' argument that the Service should be required to show that the species it addresses first are in greater peril. *BLF, 146 F.3d at 1255.* Rather, because the Court interpreted the legislative history to be ambiguous on the point, it deferred to the defendants'

more expansive interpretation that limited funding excused a delay in the initial listing process. This Court agrees and will not require Defendants to show that the other species are in fact in greater danger... in order to avoid summary judgment. Defendants' detailed explanation of its budgetary problems is sufficient.

*Center for Biological Diversity v. Norton,* 208 F.Supp.2d 1044, 1049, fn. 4 (N.D.CA. 2002).

Defendants have provided extensive evidence that the portion of their FY 2002 budget which was designated for endangered species and critical habitat listing was committed to other listing activity dictated by court orders and settlement agreements. Declarations of Frazer and Tresize, Def's Opposition and Cross–Motion. Plaintiffs' response to this evidence is to argue that the agency engaged in activities that were peripheral at best (and unconnected, at worst) to their primary mission of investigating and acting on listing requests. To support this argument, they produced a series of exhibits and declarations which suggest that agency personnel were at times devoting themselves and agency resources to non-listing activities.

 Plaintiffs' evidence is not persuasive. The fact that, during the period in question, FWS consigned a portion of their time and budget to activities that did not directly support their listing activities is not probative on the issue of whether funding limitations prevented them from making the 90–day finding on plaintiffs' petition in a timely manner. While analyzing and investigating the *status of potentially* endangered species and critical habitats is unquestionably the priority function of the agency under the ESA, it is not possible

(and plaintiffs do not actually suggest) that they can do so 100% of the time. Their budget consists of other funds in addition to those earmarked for listing purposes and presumably the agency has other administrative responsibilities common to the functioning of any government bureaucracy. Unless plaintiffs can offer proof that funds allotted to listing activity were actually expended for some other purpose, their proof that agency personnel at times were performing tasks unrelated or tangentially related to listing will not suffice to defeat defendants' budget argument and their corroborating evidence.

Plaintiffs go so far as to introduce "incriminating" documents from a different FWS office than the one to which their petition was assigned, arguing that the resources of every office of the agency should be brought to bear on their petition if the assigned office comes up short of funds. Plaintiffs' Opposition, p. 17. This position is unsupported by either statutory language, case law or common sense. Additionally, plaintiffs' suggestion that they be permitted to challenge, on a project by project basis, FWS's choice of which species to investigate for possible listing raises the specter of protracted and wasteful litigation over which species is the most endangered and deserving of the agency's limited resources.

Nowhere in either of plaintiffs' claims for relief as they appear in the amended complaint is the delay in reaching a final determination of the emergency listing (as opposed to the 90–day finding) raised.[1] The issue of whether the refusal to emergency list the MSG in March 2002 or the refusal to emergency list as published in the December 2002 Federal Register was the agency's "final action" on this subject

---

1. In their Prayer for Relief, plaintiffs request a declaratory judgment regarding the "delay" in publishing the emergency listing findings in the Federal Register, but they never state the grounds on which they allege it to be unlawful.

is disputed (see discussion *infra*). Given plaintiffs' position that the March letter offering the agency's "initial" determination constituted a "final agency action," it is not entirely surprising that they did not allege unlawful delay on defendants' part in their refusal to emergency list. In any event, the Court will not address the issue of delay as it obtains to the emergency listing, as plaintiffs did not plead it as an unlawful act on the Secretary's part.

*The APA v. the ESA: the "final agency action" issue*

As a preliminary matter, the Court must determine what effect, if any, plaintiffs' amended complaint had on their Second Claim for Relief, entitled "Violation of Section 4(b)(7) and 4(b)(1)(A) of the ESA: Failure to Make an Adequate Determination with Respect to Emergency Listing."

When plaintiffs first filed their complaint in July of 2002, defendants had not published their findings regarding plaintiffs' petition in the Federal Register. Plaintiffs' causes of action were based on the failure of FWS to issue a 90–day finding and the agency's refusal to emergency list the MSG, both of which were embodied in a letter dated March 20, 2002 (AR at 499). In the wake of the published findings in the Federal Register on December 26, 2002 (and a subsequent summary judgment ruling which dismissed their first cause of action), plaintiffs were permitted to amend their complaint to reflect the changed circumstances. They added a new "First Claim for Relief" which attacked the "delay in issuing and publishing the 90 day finding" on their petition as a violation of the ESA and an arbitrary, capricious and unlawful act (Amended Complaint, ¶¶ 4.7 and 4.9).

Most significantly for purposes of this opinion, not a single word of their Second Claim for Relief was changed. Nor did plaintiffs make any attempt to supplement the Administrative Record which had already been filed in conjunction with the original complaint, effectively stopping the clock on evidentiary proof at March 20, 2002.

The Federal Rules of Civil Procedure envision a notice-pleading system, to which plaintiffs appeal in their attempt to stretch their Second Claim for Relief to cover the subsequent denial embodied in the last (December 2002) ruling regarding emergency listing. But the problem for plaintiffs is that nothing in their Second Claim for Relief puts defendants on notice that the December 2002 emergency listing decision is being challenged. Having changed nothing about this second claim from the language of their original complaint, plaintiffs have done nothing to put defendants on notice that the scope of their challenge had expanded to include the later, published denial of their emergency listing request. Plaintiffs will therefore be limited in their Second Claim for Relief to their original challenge of the March 2002 denial of the emergency listing request.

In its letter of March 20, 2002, FWS stated that its "initial review of this petition does not indicate that an emergency situation exists." (AR at 499.) Defendants seek summary judgment dismissing plaintiffs' second cause of action on the grounds that this finding does not represent a "final agency action" and is therefore not reviewable by this Court. They argue that the Administrative Procedures Act ("APA") restricts judicial review in these circumstances to final agency actions (5 U.S.C. § 704) and that this "initial" determination does not qualify.

Plaintiffs attack this position on two grounds: (1) that the emergency listing refusal is reviewable under the ESA, not the APA (and therefore the "final agency action" analysis is inapplicable) and (2) that the March 2002 refusal was, in any event, a "final agency action."

Plaintiffs' position regarding the standard of review for emergency listing decisions is less than clear. On the one hand, they concede that the right to judicial review of the agency's actions is granted by the APA (Plaintiffs' Motion for Summary Judgment, 14:8). On the other hand, they argue that, because the Secretary's duty to respond to emergency listing requests is not discretionary, judicial review of such a decision is governed by the ESA, not the APA.

It is understandable why plaintiffs wish to prevail on this argument—if the Court conducts its review under the ESA, the issue of whether what is before the Court is a final agency action is irrelevant— § 1540(g)(1)gives district courts jurisdiction "to enforce any such provision or regulation, or to order the Secretary to perform such act or duty," as long as the act or duty is "not discretionary with the Secretary."

Plaintiffs' position may be understandable, but it is not defensible. The right of a citizen to request an emergency listing arises under 16 U.S.C. § 1533(b)(7):

> Neither paragraph (4), (5), or (6) of this subsection or section 553 of Title 5 shall apply to any regulation issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants..."

Nothing about the language of this subsection indicates, either directly or indirectly, that the Congress intended that the option of emergency listing was non-discretionary with the Secretary. The conventional hallmarks of a mandatory duty— e.g., an explicit definition of what circumstances constitute an "emergency," or a definite timeline under which the agency must respond to a request for emergency listing—are completely missing. Plaintiffs' counsel conceded at oral argument that the statute contains no guidelines for

the Court to determine what the defendants' duties are in responding to an emergency listing request.

■ What is clear from reading this subsection in the context of the entire statutory scheme is that Congress intended the emergency listing mechanism to be an option which the agency could exercise if, in its discretion, it determined that the threat to a particular species was emergent. To make such a determination non-discretionary would defeat the purpose of the option—every petitioner would simply declare that their request constituted an emergency, thus forcing the agency to respond immediately regardless of the validity of the request or the existence of prior resource commitments or budgetary constraints. Congress knows how to fashion mandatory statutory language; they did not do so here, and the Court will not impose non-discretionary requirements where none exist.

■ So the Court turns to the APA for further guidance. 5 U.S.C. § 704 reads, in relevant part:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

Since this agency's decision to not emergency list the MSG is not reviewable under the ESA, it is not reviewable until it is a "final agency action." The issue then becomes whether FWS's refusal to emergency list in its letter of March 20, 2002 is a final agency action. The Court finds that it is not.

An agency action is not "final" until it can be said to represent the "consummation of the agency's decisionmaking process," one which is neither tentative nor interlocutory in nature. *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citations omitted). The language of the March 20 letter, indi-

cating that the agency's "initial review" of the petition indicated that an emergency did not exist, instead suggests that a final decision had not yet been reached.

The language of plaintiffs' complaint itself reflects just such an understanding. It states that "[o]n April 11, 2002, Plaintiffs sent a second letter, again expressing concern over *the delays in the consideration of emergency listing ...*" (Complaint, ¶ 3.15, emphasis supplied) Had plaintiffs considered the refusal to emergency list contained in the March letter to be the agency's "final action," they would not have written them the following month to complain about the "delays" in considering their request.

In addition, the action "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett,* 520 U.S. at 178, 117 S.Ct. 1154 (citations omitted). The Court finds that no rights or obligations were determined by the letter, nor did it have any legal consequences.

Having found (1) that plaintiffs' pleadings limit the consideration of defendants' acts regarding emergency listing to those contained in the letter of March 20, 2002 and (2) that the agency's refusal at that time to emergency list the MSG was not a "final agency action," that decision is not reviewable and defendants are entitled to summary judgment in their favor on that claim.

*Conclusion*

There are no disputed issues of material fact between these parties. The Court finds that, as a matter of law, defendants lawfully delayed (based on legitimate and demonstrated funding limitations) issuing a 90-day finding on plaintiffs' petition to list the Mono sage grouse as an endangered species. The Court further finds that plaintiffs' pleadings limit review of defendants' actions to the period ending with their letter of March 20, 2002 and

that the agency's decision in that letter not to emergency list the Mono sage grouse was not a "final agency action" and therefore not subject to judicial review.

Summary judgment will issue in favor of defendants and this matter will be dismissed with prejudice.

The clerk is directed to provide copies of this order to all counsel of record.