INSTITUTE FOR WILDLIFE
PROTECTION, et al.,
Plaintiffs,

v.

Gale NORTON, et al., Defendants.

No. C04–0594RSM.

United States District Court,
W.D. Washington,
at Seattle.

Sept. 7, 2004.

**1224**

Don Webb, Institute for Wildlife Protection, Eugene, OR, Michael C. Subit, Frank Freed Subit & Thomas, Seattle, WA, for Plaintiffs.

Keith W. Rizzardi, United States Department of Justice, Wildlife and Marine Resources Section, Washington, DC, for Defendants.

## ORDER OF DISMISSAL

MARTINEZ, District Judge.

This matter comes before the Court on defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and motion for judgment on the pleadings. (Dkt.# 11). On March 19, 2004, plaintiffs filed the instant lawsuit, raising four claims, and alleging, *inter alia,* that defendants have failed to make preliminary determinations pertaining to plaintiffs' citizen petition to list the Western Gray Squirrel as an endangered species under the Endangered Species Act ("ESA"). (Dkt.# 1). Following the filing of the Complaint, the parties filed numerous motions and supporting briefs. (*See* Dkts. # 6, # 11, # 12, # 14, # 15, # 17, # 18, # 19, # 24, # 25, # 26 and # 27).

The Court subsequently granted summary judgment on claim one, denied voluntary remand, denied a request for an extension of time in which to respond to dispositive motions, declined to compel the filing of the administrative record, declined to stay discovery, and re-noted defendants' cross-motions to dismiss claims two, three and four for consideration on August 20, 2004. (Dkt.# 28).

Plaintiffs have filed a response to the motions to dismiss, and defendants have filed their reply. (Dkts. # 29 and # 30). The briefing on the various motions is now complete. Accordingly, it is hereby ORDERED:

**(1) *Defendants' 12(c) Motion for Judgment on the Pleadings.*** Defendants' Cross–Motion for Judgment on the Pleadings (Dkt. # 11 at 17) is GRANTED.

### A. *Standard of Review*

Under Rule 12(c) of the Federal Rules of Civil Procedure, any party may seek judgment on the pleadings after the pleadings are closed. Fed.R.Civ.P. 12(c). A judgment on the pleadings is properly granted when, taking all of the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law. *Fajardo v. County of Los Angeles,* 179 F.3d 698 (9th Cir.1999) (citation omitted); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). "If ... matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." Fed.R.Civ.P. 12(c). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Claim Two—Promotion of Non-Mandatory Work Over Citizen Petitions

■ Plaintiffs allege in claim two that defendants regularly "promote" non-mandatory work, such as making findings on candidate species, above that of work on citizen petitions to list endangered species. (Dkt. # 1 at 11–12). Plaintiffs also allude that defendants may be using listing funds to perform non-mandatory work. (Dkt. # 29 at 5). Defendants argue that this claim should be dismissed under Rule 12(c) because much of the non-mandatory work is funded separately from the listing budget, and therefore has no effect on the listing process, and because this Court has already rejected the same argument in previous cases. (Dkt. # 11 at 17–19). For the reasons set forth below, the Court agrees with defendants.

In *Institute for Wildlife Protection v. Norton,* 303 F.Supp.2d 1175 (W.D.Wash. 2003), the Honorable Marsha J. Pechman, United States District Judge, rejected a nearly identical argument to that in the instant case. The Court explained:

> [t]he fact that, during the period in question, FWS consigned a portion of their time and budget to activities that did not directly support their listing activities is not probative on the issue of whether funding limitations prevented them from making the 90–day finding on plaintiffs' petition in a timely manner. While analyzing and investigating the status of potentially endangered species and critical habitats is unquestionably the priority function of the agency under the ESA, it is not possible (and plaintiffs do not actually suggest) that they can do so 100% of the time. Their budget consists of other funds in addition to those earmarked for listing purposes and presumably the agency has other adminis-

trative responsibilities common to the functioning of any government bureaucracy. Unless plaintiffs can offer proof that funds allotted to listing activity were actually expended for some other purpose, their proof that agency personnel at times were performing tasks unrelated or tangentially related to listing will not suffice to defeat defendants' budget argument and their corroborating evidence.

Plaintiffs go so far as to introduce "incriminating" documents from a different FWS office than the one to which their petition was assigned, arguing that the resources of every office of the agency should be brought to bear on their petition if the assigned office comes up short of funds. This position is unsupported by either statutory language, case law or common sense. Additionally, plaintiffs' suggestion that they be permitted to challenge, on a project by project basis, FWS's choice of which species to investigate for possible listing raises the specter of protracted and wasteful litigation over which species is the most endangered and deserving of the agency's limited resources.

*Inst. for Wildlife Prot.,* 303 F.Supp.2d at 1178.

That reasoning is persuasive to the instant motion. In support of their second claim, plaintiffs point to one statement made by defendants in September of 2002 explaining that an agency decision had been delayed pursuant to the agency's listing prioritization guidelines. (*See* Dkt. # 29 at 5). Those guidelines set the agency's first priority as review of emergency listings, their second priority as processing final decisions on proposed listings, their third priority as resolving the status of candidate species, and their fourth priority as processing of petitions. (Dkt. # 29, Attachment 2 at 4). However, that is nearly

the exact statement that plaintiffs' relied on in support of their argument—which this Court rejected—in *Inst. for Wildlife Prot., supra. See Inst. for Wildlife Prot.,* 303 F.Supp.2d at 1176. Thus, petitioner's statement that they did not realize defendants were "working on candidates in lieu of working on petitions," until after that litigation is disingenuous. (Dkt. # 29 at 5). Furthermore, defendants' statement provides no indication that they are unlawfully using listing funds for non-mandatory work.

Moreover, plaintiffs' own statement highlights the problem with their second claim—they have no proof that listing funds are being used on non-mandatory work. Plaintiffs state that the "issue of whether Defendants are or have been expending funds from the listing budget for non-mandatory tasks ... should not be decided on the ... motion for summary judgment, because *if* Plaintiffs are able to find even one instance where FWS used listing funds to work on candidates or any other non-mandatory actions, Defendants motion would be defeated." (Dkt. # 29 at 5) (emphasis added). Plaintiffs insist that the completion of discovery in this case will uncover facts pertaining to this issue. (Dkt. # 29 at 5–6).

■ To maintain an action in federal court, an actual case or controversy must exist, and discovery may not be used to conduct a fishing expedition in hopes that some fact supporting an allegation will be uncovered. *See Rivera v. Nibco, Inc.,* 364 F.3d 1057, 1072 (9th Cir.2004)(explaining that "district courts need not condone the use of discovery to engage in 'fishing expedition[s].'") (citation omitted). Moreover, neither the ESA nor the APA provide a mechanism for challenging defendants' prioritization of its workload. Rather, those statutes allow plaintiffs to defendants' failure to complete a mandatory duty. *See* 16 U.S.C. § 1540(g)(1)(c) and 5 U.S.C.

§ 706(1). Accordingly, the Court follows Judge Pechman's reasoning in *Inst. for Wildlife Prot., supra,* and DISMISSES plaintiffs' second claim.

**(2) *Defendants' 12(b)(1) Cross–Motion to Dismiss for Lack of Subject–Matter Jurisdiction.*** Defendants' Cross–Motion to Dismiss Claim Three for Lack of Subject–Matter Jurisdiction (Dkt. # 11 at 19) is GRANTED.

### A. Standard of Review

■ A motion to dismiss under Rule 12(b)(1) of the Federal Rule of Civil Procedure addresses the court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). They possess only that power authorized by United States Constitution and statute, which is not to be expanded by judicial decree. *Id.* The burden of establishing the subject matter jurisdiction rests upon the party asserting jurisdiction. *Id.* When considering a motion to dismiss pursuant to Rule 12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

### B. Claim Three—Pattern and Practice Challenges

■ In their Complaint, plaintiffs allege under claim three that defendants have a "long standing practice, procedure, policy and/or course of conduct to delay acting on, or failure to act on, petitions to list species under the ESA, filed by the Institute and by other citizens." (Dkt. # 1 at 11–12). Defendants Norton and Williams have moved this Court to dismiss that claim, asserting that the Court lacks sub-

ject matter jurisdiction because U.S. Supreme Court precedent forecloses any challenge to an agency's general pattern, practice, or policy. (Dkt. # 11 at 19). For the reasons set forth below, the Court agrees with defendants.

Defendants primarily rely on *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), in support of their motion to dismiss. In *Lujan*, the Supreme Court held that a defendant "cannot seek *wholesale* improvement of [a] program by court decree, rather than in the offices of the [agency] or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Lujan*, 497 U.S. at 891, 110 S.Ct. 3177 (emphasis in original). The Court went on to explain that:

a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

*Id.*

The Supreme Court recently reaffirmed that principle. In *Norton v. Southern Utah Wilderness Alliance*, — U.S. —, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004), the Court explained:

a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take. These limitations rule out several kinds of challenges. The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. Nat'l Wildlife Fed'n* .... There

we considered a challenge to BLM's land withdrawal review program, couched as unlawful agency "action" that the plaintiffs wished to have "set aside" under § 706(2). We concluded that the program was not an "agency action".... *S. Utah Wilderness Alliance*, — U.S. at — — —, 124 S.Ct. at 2379–80 (citations omitted).

Plaintiffs first respond that *Lujan* and its progeny are not applicable because their claim arises under the ESA, 16 U.S.C. § 1540(g)(1)(C), not the APA. (Dkt. # 29 at 9–11). The Court finds plaintiffs' argument misguided. Section 1540(g)(1) allows:

any person [to] commence a civil suit on his own behalf—

.　　　.　　　.　　　.　　　.

(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be.

16 U.S.C. § 1540(g)(1)(©).

As defendants note, this section of the ESA properly granted district court jurisdiction over plaintiffs' claim one. (*See* Dkt. # 30 at 9–10). Indeed, this Court assumed jurisdiction over that claim, and granted summary judgment to plaintiffs. (Dkt. # 28). However, plaintiffs, in claim three, allege that defendants have repeatedly failed to perform their mandatory duty to meet the deadlines contained in the ESA, and request that the Court produce an order addressing "all petitions submitted by any person." (Dkt. # 1 at

14). Section 1540(g)(1) specifically states that a plaintiff may bring a suit on his own behalf—not "any person" who submits a citizen petition—to compel action when defendants have failed to perform a non-discretionary duty. The Court has already granted that relief to plaintiffs by granting summary judgment on their first claim, and by ordering defendants to comply with the statute and review plaintiffs' citizen petition. (Dkt.# 28). Thus, the Court agrees with respondents that claim three, as it pertains to "all petitions submitted by any person," is not properly raised under 16 U.S.C. § 1540(g)(1)(C). (*See* Dkt. # 30 at 9–10).

Plaintiffs next argue that, even if they cannot seek relief under the ESA, they may properly bring their claim under the APA. (Dkt. # 29 at 11). Pursuant to 5 U.S.C. § 706(1), a person may bring a claim against an agency who has unlawfully withheld or unreasonably delayed action that it is required to take. Plaintiff's argue that jurisdiction over claim three arises under this section because defendants have repeatedly failed to make timely decisions on citizen petitions. (Dkt. # 29 at 11–12). Again, plaintiffs argue that *Lujan* and its progeny do not apply to their claim, because *Lujan* applies to abstract, programmatic challenges, whereas, the instant claim involves at least' four specific violations of the ESA and APA. (Dkt. # 29 at 12). The Court disagrees with plaintiffs.

In an attempt to distinguish their claim from the broader programmatic challenges raised in *Lujan* and *S. Utah Wilderness Alliance, supra,* plaintiffs cite to four discrete instances where respondents have failed to review their citizen petitions in accordance with the deadlines set forth in the ESA, and argue that it is the pattern formed by these agency inactions that is challenged in claim three. (*See* Dkt. # 29 at 8 and 11). Plaintiffs further direct the

Court to a recent decision by the Ninth Circuit Court of Appeals, in which the Court determined that because plaintiffs were alleging "specific discrete agency actions taken by the [agency] that have caused harm," they were not raising an impermissible programmatic challenge. *High Sierra Hikers Ass'n v. Blackwell,* 381 F.3d 886, 895–96 (9th Cir.2004).

Although plaintiffs explain that their case "is not a general, abstract programmatic challenge under the APA, but rather a challenge to repeated, specific violations of the ESA," the *Sierra Hikers* reasoning cannot be applied to their claim. (*See* Dkt. # 29 at 9). Significantly, *Sierra Hikers* involved challenges to actions that the agency had already taken, not *inaction* by the agency. While plaintiffs point to defendants' failure to act on four of their citizen petitions, arguing that the failures to act in a timely manner on citizen petitions "prevents any of the protections for endangered species that Congress so carefully crafted from taking effect," that is not the type of "final agency action" analyzed in *Sierra Hikers.* (Dkt. # 29 at 12). There, the Court explained:

> High Sierra did not challenge the entirety of the wilderness plan, but instead challenged *certain agency actions,* for example the grant of certain special-use permits, and the calculation of certain trailhead limits. In its complaint, High Sierra challenged the issuance of "special-use permits" in the Inyo and Sierra National Forests. A special-use permit is the legal instrument by which the Forest Service authorizes commercial services. The issuance of a specific special-use permit *is a final agency action* that has an actual or immediately threatened effect sufficient to trigger standing under *Lujan.*

*High Sierra Hikers Ass'n,* 381 F.3d 886, 895–96 (citations omitted) (emphasis added).

In the instant case, it appears that plaintiffs are attempting to raise a pattern and practice claim that has been precluded by *Lujan, supra.* (*See* Dkt. # 29 at 11). Indeed, plaintiffs state that defendants have repeatedly violated the deadline and "will surely do it again in the near future, as they have taken no steps to address the funding problems they have brought upon themselves, nor have they changed the very lengthy times they take to make these simple, initial findings." (Dkt. # 29 at 11–12). Thus, plaintiffs ask this Court to look beyond their own petitions, and order defendants to make "wholesale improvements" to its citizen petition review process. *See Lujan,* 497 U.S. at 891, 110 S.Ct. 3177. The Court is precluded by *Lujan* from ordering such action.

This determination is consistent with a recent ruling in another case in this District between the same parties. In *Institute for Wildlife Protection v. Norton,* Case No. C03–1251P, the Honorable Marsha J. Pechman, United States District Judge, rejected a pattern and practice claim raised by plaintiffs, explaining that:

> the holding of *Lujan* . . . denies jurisdiction to hear "pattern and practice claims" regarding how an agency conducts its business on a system-wide level. Plaintiffs may direct their attacks against a particular agency action,
>
>> [b]ut it is at least entirely certain that the flaws in the entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of respondent's members.

(Dkt. # 30, Attachment 1 at 9). The Court finds that reasoning persuasive. Accordingly, the Court agrees with defendants that it lacks subject matter jurisdiction over claim three, and the cross-motion to dismiss under 12(b)(1) is GRANTED.

**(3)** ***Defendants' Motion to Dismiss Claim Four as Moot.*** Defendants' Motion to Dismiss Claim Four (Dkt. # 11 at 21) is GRANTED.

Plaintiffs allege under claim four that defendants have failed to respond to their petition for an emergency rule to temporarily list the Western Gray Squirrel as an endangered species. (Dkt. # 1 at 12). Defendants answer that because this Court has already ordered them to review plaintiffs' petition by the end of September, claim four is now moot. (Dkt. # 30 at 10–11).

The Court agrees with defendants. Pursuant to this Court's order, respondents must review plaintiff's petition by September 26, 2004. (Dkt. # 28 at 4). At that time, defendants will determine whether the Western Gray Squirrel should be emergency listed, or whether it should be listed on the regular timeline. Thus, the Court finds that it has already provided the relief plaintiffs seek under claim four, and that plaintiffs have provided no reason to require defendants to review the "emergency petition" prior to the date they have already been given. Accordingly, respondents' motion to strike claim four AS MOOT is GRANTED.

**(4)** The Clerk is directed to send a copy of this Order to all counsel of record.