**SAVE OUR SPRINGS ALLIANCE,**
Plaintiff,

v.

**Gale NORTON, Secretary of the Interior, and United States Fish, and Wildlife Service, Defendants.**

No. A–04–CA–314–LY.

United States District Court,
W.D. Texas,
Austin Division.

March 18, 2005.

William G. Bunch, Attorney at Law, Bradley L. Rockwell, John Andrew Frits-

chie, Save Our Springs Alliance, Austin, for Save Our Springs, Alliance, plaintiff.

Daniel M. Castillo, Assistant United States Attorney, Austin, Jimmy A. Rodriguez, U.S. Dept. of Justice, Washington, DC, for Gail Norton, Secretary of the Interior, United States Fish and Wildlife Service, defendants.

Michael Klein, Smith, Robertson, Elliott & Glen, L.L.P., Lisa Diane Michaux, Smith, Robertson, Elliott & Glen, Alan M. Glen, Smith, Robertson, Elliott & Glen, Austin, for Regents School of Austin, Inc., amicus.

### OPINION AND ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT

YEAKEL, District Judge.

Plaintiff Save Our Springs Alliance ("SOSA") brings this action against Defendant Gale Norton, Secretary of the Interior and the United States Fish and Wildlife Service (together the "Service") alleging violations of the "regular listing" and "emergency listing" provisions of the Endangered Species Act (the "Act"), 16 U.S.C. §§ 1533(b)(3), (b)(7) (2000). On July 6, 2004, SOSA filed a Motion for Partial Summary Judgment (Clerk's Doc. No. 15) regarding its "emergency listing" claim. The Service filed its Response and Cross–Motion for Partial Summary Judgment on August 16, 2004 (Clerk's Doc. Nos. 22 and 23). SOSA filed its Reply to Defendant's Cross Motion for Summary Judgment on August 24, 2004 (Clerk's Doc.

No. 27). On August 16, 2004, the Court allowed the Regents School to file an *Amicus Curiae* brief (Clerk's Doc. No. 25). The Regents School filed its *Amicus Curiae* Brief in Opposition to SOSA's Motion for Partial Summary Judgment on August 19, 2004 (Clerk's Doc. No. 26) and it filed its *Amicus Curiae* Reply Brief in Support of the Service's Cross–Motion for Partial Summary Judgment on August 31, 2004 (Clerk's Doc. No. 31).

On September 22, 2004, the Court heard oral argument from the parties regarding their respective motions for partial summary judgment. The Court also heard argument from *Amicus Curiae*, the Regents School.

SOSA filed a Motion for Summary Judgment (Clerk's Doc. No. 43) regarding its "regular listing" claim on October 15, 2004. The Service filed its Cross Motion for Summary Judgment (Clerk's Doc. No. 42) on October 15, 2004. SOSA filed a Response to Defendant's Cross Motion for Summary Judgment on October 19, 2004 (Clerk's Doc. No. 44). The Service filed a Response to Plaintiff's Motion for Summary Judgment on November 1, 2004 (Clerk's Doc. No. 45).[1] SOSA then filed a Reply in Support of its Motion for Summary Judgment on November 8, 2004 (Clerk's Doc. No. 46).

In its motion for partial summary judgment, SOSA alleges that the Service had violated the "emergency listing" provision of the Act. *See* 16 U.S.C. § 1533(b)(7). SOSA requested the Court to order the Service to issue a final response to their

---

[1] Plaintiff's asserts that the Service has improperly titled its Cross Motion for Summary Judgment because the Service is not seeking a summary judgment on its own behalf. Although the Service appears to concede the issue, after careful review of the Service's Cross Motion for Summary Judgment, the Court concludes that the Service asks for affirmative relief, specifically, it asks that the Court grant it until January 20, 2005, to issue its "90–day" finding and until December 8, 2005, to issue its "12–month" finding. Thus, the Court will address the Service's motion as a motion for summary judgment and will deny as moot that portion regarding the "90–day" finding and grant that portion regarding the "12–month" finding for reasons stated herein.

"emergency listing" petition within thirty days of an order from this Court. In its motion for summary judgment, SOSA alleges that the Service had violated the "regular listing" provision of the Act and requested the Court to order the Service to issue a "90–day" finding, regarding whether further consideration of *cicurina cueva* is necessary, immediately and a "12–month" finding, determining whether to add *cicurina cueva* to the endangered-species list, within thirty days of an order by the Court. 16 U.S.C. §§ 1533(b)(3). SOSA requested in the alternative that the Service issue both a "90–day" finding and a "12–month" finding within thirty days of an order by this Court.

Having reviewed the partial summary-judgment motions, response, and reply, the *amicus curiae* brief and reply, as well as the oral arguments of the parties and *amicus curiae,* and the summary judgment motions, responses, and reply and all summary-judgment evidence submitted by the parties, the Court finds SOSA's motion for partial summary judgment should be denied as moot, the Service's August 16, 2004 motion for partial summary judgment should be denied as moot, SOSA's motion for summary judgment should be denied, and the Service's October 15, 2004 cross motion for summary judgment should be granted in part for the following reasons.

### I. Factual Background

On July 7, 2003, SOSA filed a petition with the Service requesting the Service to add *cicurina cueva* to the endangered-species list, a statutorily mandated list of species that the Secretary of the Interior has determined require protection due to the threatened destruction of their habitat, overutilization, disease or predation, inadequate regulatory mechanisms, or other fac-

tors. 16 U.S.C. § 1533(a)(1). SOSA also requested that the Service "emergency list" the species on the endangered-species list. *Cicurina cueva* is a troglobitic spider[2] which is known to live in only two caves, Flint Ridge Cave and Cave X, both in Travis County, Texas. Both caves are in the Balcones Fault Zone and the Barton Springs segment of the Edwards Aquifer. Flint Ridge Cave is located at the southern edge of Travis County on property owned by the City of Austin. Cave X is located on the site of the Regents School in Southwest Austin.

SOSA's petition alleges that *cicurina cueva* warrants listing on the endangered-species list under four of the Act's criteria: (a) natural factors affecting its continued existence, (b) the present or threatened destruction, modification or curtailment of its habitat range, (c) predation, and (d) inadequacy of existing regulatory mechanisms. *See* 16 U.S.C. § 1533(a)(1). SOSA contends that the species is threatened by three natural factors. First, the total population and distribution of *cicurina cueva* is small. Second, the species is unable to disperse into new habitats. And third, the species is dependent on stable conditions in its environment. SOSA contends that several factors pose present or threatened destruction, modification, or curtailment of the species's habitat. Each of the factors that SOSA lists are related to the proposed construction and operation of State Highway 45 South ("SH 45 South")—a major highway that will connect Interstate Highway 35 to Loop 1 in the City of Austin. The right of way for the highway is currently planned to be 100 feet immediately up gradient from the entrance to Flint Ridge Cave. SOSA contends that the proximity of the highway to the cave will

---

2. Troglobites, such as *cicurina cueva,* are also known as karst invertebrates and inhabit karst terrain, which is formed by the dissolu-
tion of calcium carbonate from limestone bedrock by groundwater forming subterranean caves, sinkholes, and fractures.

threaten *cicurina cueva* even during the construction of the highway because the activity will disrupt soil near the cave causing drainage problems within the cave. SOSA contends that, once the highway is constructed, petrochemical, herbicidal, and pesticidal runoff from the highway will pose a long-term threat to the species. SOSA asserts that even taking measures to impede runoff from entering the cave could cause problems, because such measures may deflect water that would have ordinarily entered the cave and thus may destabilize the cave's naturally humid environment. SOSA contends that fire ants pose a significant predation threat and that the highway may attract fire ants to the area due to littering. Finally, SOSA claims that existing regulatory mechanisms are inadequate to protect *cicurina cueva*. SOSA points out that both Cave X and Flint Ridge Cave are listed for protection under the Act by virtue of a permit held by the City of Austin and Travis County, known as the Balcones Canyonlands Conservation Plan (BCCP), as caves containing "species of concern." *See* 16 U.S.C. § 10(a) (2000). Flint Ridge Cave was purchased by the City of Austin under the "Proposition Two Watershed Protection Program," a program by which the City of Austin purchased land for parks and greenways. However, SOSA asserts that rather than preserving the environmental integrity of the cave, the City of Austin conveyed to Travis County a right of way for SH 45 South adjacent to and upstream of Flint Ridge Cave. SOSA requested the Service to "emergency list" *cicurina cueva* as an endangered species because it views these threats as immediate and because there are only two known populations of *cicurina cueva* in existence.

On September 22, 2003, the Service sent SOSA a letter indicating that it "ha[d] begun the process of conducting a status review of the species to determine if candidate status [for the endangered-species list] is warranted." The Service further stated that it "d[id] not currently have sufficient information to determine whether it is appropriate to emergency list *cicurina cueva* pursuant to 4(b)(7) of the Act; therefore, [the Service] is not at this time making a decision on your petition to emergency list."

On May 25, 2004, SOSA filed this suit alleging that the Service had violated the Act by failing to make a final decision on SOSA's petition for an "emergency listing" of *cicurina cueva* as an endangered species. 16 U.S.C. § 1533(b)(7). SOSA further alleged that the Service had violated the Act by not responding to its petition to "regular list" *cicurina cueva* on the endangered-species list within the 90–day and 12–month deadlines prescribed in the Act. 16 U.S.C. § 1533(b)(3).

## II. Analysis

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir.2000) (internal quotations and citations omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir.1999). Howev-

er, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden," *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996), and only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Statutory Background

Section 1533 of the Act outlines the process the Service must follow when handling petitions for the listing of a species on either the endangered or threatened-species list:

> To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 to add a species to, or remove a species from, either of the lists published under subsection (c) of this section [the endangered or threatened species list], the Secretary [of the Interior] shall make a finding as to whether the petition presents . . . information indicating that the petitioned action may be warranted. If such a petition is found to present such information, the Secretary shall promptly commence a review of the status of the species concerned. The Secretary shall promptly publish each finding made under this subparagraph in the federal Register.

16 U.S.C. § 1533(b)(3)(A). The section goes on to state that "within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted," the Secretary must issue findings stating either that the petition is warranted, is not warranted, or is warranted, but is precluded by some other factor. *Id.* § 1533(b)(3)(B).

The Act allows the agency to circumvent the typical rulemaking procedures outlined above to "emergency list" a species as endangered or threatened when the Secretary finds it necessary:

> Neither (4), (5), or (6) of this subsection nor section 553 of Title 5 shall apply to any regulation issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species . . . , but only if—
>
> (A) at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary; and
>
> (B) in the case such regulation applies to resident species of fish or wildlife, or plants, the Secretary gives actual notice of such regulation to the State agency in each State in which such regulation is believed to occur.

*Id.* § 1533(b)(7).

## C. Partial Summary Judgment— "Emergency Listing" Claim

SOSA argues that the Service violated the Act and the Administrative Procedure Act (the "APA") by not reaching a final decision regarding its petition to emergency list *cicurina cueva* as an endangered species. *See* Administrative Procedure Act, 5 U.S.C. §§ 555(e), 706(1) (1996). SOSA contends that its petition to "emergency list" the species is a separate petition from its "regular listing" petition. *See* 16 U.S.C. § 1533(b)(3). SOSA argues that although the Act provides a specific timetable regarding when the agency must respond to a "regular listing" petition, the Act provides no such timetable for a request to "emergency list." *Compare* 16 U.S.C. § 1533(b)(3) *with* 16 U.S.C. § 1533(b)(7). Thus, SOSA argues, the Court should use the APA provisions to determine if and when their petition

should have been answered. SOSA asserts that the APA requires the Service to answer its "emergency listing" petition without unreasonable delay. 5 U.S.C. §§ 555(e), 706(1); *see also WWHT v. F.C.C.*, 656 F.2d 807, 813 (D.C.Cir.1981).

■ On January 26, 2005, the Service issued its 90–day finding regarding *cicurina cueva* wherein it determined that the species warranted further consideration. The finding also denies SOSA's emergency petition on the basis that the Service is currently working with the property owners of Cave X and Flint Ridge Cave and both property owners "have indicated interest in avoiding or minimizing impacts to the species." Because of the Service's action, this Court concludes that SOSA's motion for partial summary judgment regarding its emergency listing claims and the Service's motion for partial summary judgment regarding SOSA's emergency listing claim should be denied as moot. *See Institute for Wildlife Protection v. Norton*, 2004 WL 2155344, *6 (W.D.Wash.2004).

### D. Summary Judgment—"Regular Listing" Claim

SOSA's summary-judgment motion deals exclusively with the Service's failure to issue "90–day" and "12–month" findings regarding its petition to list *cicurina cueva* on the endangered-species list. SOSA asks this Court to order the Service to make a 90–day finding on its petition immediately and to make a 12–month finding thirty days from publication of the 90–day finding, assuming the Service determines that *cicurina cueva* warrants more consideration in its 90–day evaluation. *See* 16 U.S.C. § 1533(b)(3). Because the Service has issued a 90–day finding concluding that further consideration of *cicurina cueva* is warranted, the Court will only determine whether it should order the Service to make a 12–month determination on an expedited basis. SOSA contends that the

expedited timetable that it has requested is appropriate, because the Service has been conducting studies on *cicurina cueva* for ten years and further that SOSA itself has provided the Service with extensive research on the species. Thus, SOSA concludes that the Service is well-equipped to issue its determinations regarding *cicurina cueva* quickly.

The Service acknowledges that it is woefully behind in making these determinations, according to the timetables prescribed in the Act. However, the Service argues that the Court has the discretion to allow it to answer SOSA's petition according to the timetables the Service has deemed reasonable. *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). The Service has stated that it can make a 12–month finding by December 8, 2005. The Service acknowledges that it has been studying *cicurina cueva* for a long period of time, but it contends that due to budget constraints and the fact that Congress has earmarked parts of the Service's budget for specific purposes, it is fiscally unable to properly evaluate and make its determination regarding *cicurina cueva* within the time frame suggested by SOSA. Specifically, the Service points to the moratorium Congress imposed on the Service's budget in 1995 and to chronic under funding of the agency since that time. The Service asserts that the moratorium precipitated a backlog of petitions that the Service does not have the resources to answer within the time frames prescribed in the Act. The service also points out that the Appropriations Clause of the Constitution and the Anti–Deficiency Act each preclude the Service from using other portions of its budget to help catch up on its petition work. U.S. Const., Art. I, § 9, cl. 7; 31 U.S.C. § 1341(a)(1)(A) (2003); *see also Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424, 110 S.Ct.

2465, 110 L.Ed.2d 387 (1990) (citing *Cincinnati Soap Co. v. United States,* 301 U.S. 308, 321, 57 S.Ct. 764, 81 L.Ed. 1122 (1937)).

The Service also contends that if this Court were to order it to make its 12–month finding in thirty days, as SOSA has asked, it would force the Service to "hastily prepare" a determination that may have to be reevaluated later and could lead to further litigation. The Service points to other cases in which it argues expedited timetables have led to poor results. *See, e.g., New Mexico Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.,* 248 F.3d 1277 (10th Cir.2001)(vacating and remanding critical habitat designation for southwestern willow flycatcher issued in 120 days pursuant to court order); *Middle Rio Grande Conservancy Dist. v. Babbitt,* 206 F.Supp.2d 1156 (D.N.M.2000), *aff'd* 294 F.3d 1220 (10th Cir.2002)(vacating and reversing critical habitat designation for the Rio Grande silvery minnow issued in 120 days pursuant to court order); *San Luis & Delta–Mendota Water Auth. v. Badgley,* 136 F.Supp.2d 1136 (E.D.Cal.2000)(remanding final listing decision for the Sacramento splittail issued on expedited timetable pursuant to court order). The Service further contends that if this Court were to order the Service to abide by the timetable requested by SOSA, it would force the Service to "leap frog" *cicurina cueva* to the front of a long line of petitions that are also waiting for evaluation by the Service.

SOSA responds that because the Service has itself ranked *cicurina cueva* a "2" on its priority list ("1" being the highest in priority and "12" being the lowest in priority) and due to the allegedly imminent threat the proposed SH 45 South poses the species, the possibility of the Court's order "leap frogging" *cicurina cueva* to the front of the petition line is not a persuasive reason to adopt the Service's proposed timetable. SOSA further asserts that regardless of the results of other cases involving other species, this case is distinct because of the wealth of research that has already been conducted by the Service on the species. Thus, SOSA argues a "hasty" decision is not a great danger in these particular circumstances.

■ The Court has determined that the timetable that the Service has outlined is appropriate in this case. The Court empathizes with SOSA's desire to have a quick answer to its petition; however, the Court is loath to interfere with the Service's internal processes unless absolutely warranted. It appears to the Court that the Service's delay is due in no small part to budget considerations that only Congress can solve. In this case, the Service has stated that it will make its 12–month finding on December 8, 2005—less than nine months from the date of this order. The Court finds this timetable reasonable. Although SOSA argues that there is an imminent threat posed by the proposed SH 45 South, the parties acknowledge that currently there is no on-going construction and although it appears there is no legal barrier to the project, there is a tacit understanding with the Texas Department of Transportation that the highway project will not commence before a determination on *cicurina cueva* has been reached by the Service. The Texas Department of Transportation has written the Service stating, "it is not possible to award any construction contracts until all coordination with resource agencies, including the [Service], has been completed." The Court takes the Department at its word.

For these reasons, this Court denies SOSA's entreaty to accelerate the Service's action on SOSA's petition and, therefore, will deny SOSA's motion for summary judgment. Furthermore, the Court will grant that portion of the Service's

October 15, 2004 cross motion for summary judgment that requests the Court to establish a compliance schedule for the Service to issue a "12–month" finding on *cicurina cueva.*

The parties have agreed that the Court's ruling on the parties' cross motions for partial summary judgment and cross motions for summary judgment will resolve the issues in the case. The Court concurs, particularly in light of the Service's issuance of its "90–day" finding and its response to SOSA's "emergency-listing" petition. Therefore, the Court's denial of both SOSA's motion for partial summary judgment and the Service's motion for partial summary judgment and the Court's denial of SOSA's motion for summary judgment and the Court's partial grant of the Service's October 15, 2004 motion for summary judgment will resolve all disputed claims in this case.

### III. Conclusion

For the foregoing reasons:

**IT IS ORDERED** that Plaintiff Save Our Springs Association's Motion for Partial Summary Judgment (Clerk's Document 15) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Gale Norton, Secretary of the Interior, and the United States Fish and Wildlife Service's Cross–Motion for Partial Summary Judgment (Clerk's Document 23) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Save Our Springs Association's Motion for Summary Judgment (Clerk's Document 43) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Gale Norton, Secretary of the Interior, and the United States Fish and Wildlife Service's Cross Motion for Summary Judgment (Clerk's Document 42) is **GRANTED** as to its request that the Court adopt its proposed compliance schedule for its issuance of a "12–month"

finding regarding *cicurina .cueva,* specifically, the Service shall issue its finding on or before December 8, 2005.